FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 2 1 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BIBI AZEEZ,

                                    Plaintiff,


            — against —                                          **MEMORANDUM and ORDER**

MICHAEL J. ASTRUE,                                               09-CV-3976 (SLT)
Commissioner of Social Security,

                                    Defendant.
--------------------------------------------------------X
**TOWNES, United States District Judge:**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act.

Defendant, the Commissioner of Social Security (the "Commissioner"), moves for judgment on

the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff, Bibi Azeez ("Azeez" "Plaintiff" or

"Claimant"), represented by counsel, cross-moves for judgment on the pleadings. For the

reasons detailed below, both motions are denied and the case is remanded for further

administrative proceedings consistent with this Memorandum and Order.

I.      **BACKGROUND**

        A.      **Procedural History**

        Azeez filed an application for disability insurance benefits on June 16, 2000 claiming an

inability to work, primarily due to neck and back pain, since April 20, 1999. (Tr. 77-79,82)[1]

The application was denied. (Tr. 50-53, 57-59.) Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ") and appeared, with counsel, before ALJ Seymour Fier on

May 22, 2001. (Tr. 60-61, 503-39). ALJ Fier issued a decision on June 28, 2001 finding that

Plaintiff was not disabled. (Tr. 39-49). On May 15, 2003, the Appeals Council vacated ALJ

Fier's decision and remanded the case for further proceedings. (Tr. 72-74, 390A-C.)

---

[1] Citations to the administrative record are in the form "Tr. __".

On February 4, 2004, ALJ Fier conducted another hearing and, on March 4, 2004, he denied Plaintiff's claim. (Tr. 391-401, 472-502). On review, again the Appeals Council vacated the ALJ's decision and remanded the case as of August 27, 2004. (Tr. 403-6.) The matter went to a new ALJ, and on November 2, 2005, ALJ Manuel Confresi held another hearing. (Tr. 429-71.) ALJ Confresi denied the claim in his decision issued on December 16, 2005, and the Appeals Council denied Plaintiff's request for review on April 28, 2006. (Tr. 2-4).

Plaintiff appealed to the Federal District Court, but the parties stipulated to remand pursuant to the fourth sentence of 42 U.S.C. § 405(g). (*See* Tr. 587.) On January 24, 2007, the District Court remanded the case for further administrative proceedings. (Tr. 586-88.) The Appeals Council remanded the case to ALJ Confresi on April 10, 2007. (Tr. 584-85.) ALJ Confresi held an additional hearing on March 10, 2008, issuing another unfavorable decision on May 20, 2008. (Tr. 545-66, 596-620.) After the Appeals Council denied Plaintiff's request for review on September 5, 2009, the decision became final and Plaintiff filed the present action in this Court. (Tr. 540-42.)

**B.    Factual & Medical Background[2]**

Plaintiff was born in Guyana in March of 1961 and completed the twelfth grade. (Tr. 77, 88, 433-34, 474-76, 507.) She immigrated to the United States and is an American citizen. (Tr. 474-75). She worked as a bank teller for approximately ten years (Tr. 83, 434, 435), which required her to sit up to 6 hours a day, five days per week (Tr. 83, 446), and lift as many as twenty to thirty pounds five to ten times each day (Tr. 446). Prior to her position as a bank teller,

---

[2] This decision provides only a brief summary of the medical evidence. The Commissioner provides a very detailed summary of the medical evidence in the Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings ("Def. Mem. of L.") at 5-28. In Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Judgment on the Pleadings ("Pl. Mem. of L.") at 2, fn. 1, Plaintiff also relies on Commissioner's summary of the "voluminous medical evidence."

-2-

Plaintiff worked as a cashier in a department store, which required her to stand during the work day. (Tr. 83, 435, 447, 476.)

Plaintiff stopped working on April 20, 1999, complaining that neck, back, shoulder, joint pain and dizziness made her unable to work. (Tr. 82.) Plaintiff reported that her husband does the grocery shopping and cooking for the family, although she can sometimes do light cooking and light household chores. (Tr. 103, 440, 482.) Plaintiff states that she spends her days under bed rest, watching television, listening to music, performing her physical therapy exercises and praying. (Tr. 103.)

Dr. Mehri Songhorian has been Plaintiff's treating neurologist since April 1999. (Tr. 243, 243C.) On May 27, 2003, Dr. Songhorian diagnosed Plaintiff with severe myelopathy, cervical herniated disc, severe migraine headaches and dizziness. (Tr. 243C.) Her opinion was that Plaintiff was "100% disabled." (*Id.*) Dr. Songhorian repeatedly indicated that Plaintiff was disabled, specifically determining Plaintiff could not carry or lift more than two pounds and never up to five pounds. (Tr. 244-47, 279.) Further, Plaintiff could not walk more than two blocks, nor sit, stand, or walk more than 1 hour in an eight-hour day, and was unable push and pull arm controls, bend, climb or reach. (*Id.*) On the Cervical Spine Residual Functional Capacity Questionnaire, Dr. Songhorian wrote that Plaintiff could sit for 5 minutes at a time, stand for 10 minutes at a time and sit, stand, and walk for less than two hours total in an eight-hour day. (Tr. 379-80.) The doctor further noted that Plaintiff was unable to carry any weight. (Tr. 380.)

An April 27, 1999 CT-scan of Plaintiff's cervical spine showed posterior endplate osteophyte formation to the right of the midline, causing crowding of the left lateral recess and

an extradural defect at C3-4, a broad-based posterior endplate osteophyte formation causing a
midline extradural defect and crowding of the lateral recesses at C4-5, and a left paramedial disc
herniation associated with endplate osteophyte formation causing a left-sided extradural defect
and crowding of the left lateral recess at C5-6. (Tr. 199-200, 296-97.) At C6-7 the CT-scan
indicated a 3-4mm. left-sided disc herniation causing spinal cord contact. (*Id.*) On August 22,
2000, another CT-scan of the cervical spine showed disc protrusion with spondylitic ridge
formation at C3-4 through C6-7. (Tr. 249.)

       Plaintiff had several MRIs of the cervical spine. A May 5, 1999 MRI showed ventral
osteophyte ridges at C3-4 and to the left at C5-6 and C6-7 causing cord compression. (Tr. 194.)
The MRI also revealed osteophytic neural foraminal narrowing at C3-C4, C4-C5, and C5-C6.
(*Id.*) Dr. Fred Nobandegani, a neurosurgeon, examined Plaintiff and, in response to the May
1999 MRI, recommended surgical decompression and bone fusion. (Tr. 185.) Dr. Robert B.
Snow, also a neurosurgeon, conducted a neurological consultation. (Tr. 120.) His impression
was cervical radiculopathy which seemed to be improving and, therefore, did not recommend
surgery, but conservative management. (*Id.*) Dr. Robert E. Decker, another neurosurgeon,
reviewed the CT-scan and MRI and expressed that he was "rather surprised" that Plaintiff did not
have significant radicular symptoms on the left. (Tr. 121.) Dr. Decker said there was spinal cord
compression and recommended that Plaintiff have surgery at some point. (Tr. 122.).

       A November 16, 1999 MRI showed straightening of normal lordosis compatible with
muscle spasm. (Tr. 192.) The MRI further indicated a large disc-osteophyte complex at C3-4
with a new, right paramedian component and right neural foraminal narrowing, a new disc-
osteophyte complex at C4-5, and left paramedian disc-osteophyte complexes at C5-6 and C6-7.

(*Id.*) Dr. Nobandegani conducted another examination on November 23, 1999 and opined that the MRI did not reveal significant changes from the May 1999 MRI and, based on that stability and lack of neurological deficits, Dr. Nobandegani concluded that surgery was not then necessary but would likely become necessary in the future. (Tr. 310.) On July 28, 2000, Dr. Kyung Seo, a consulting orthopedist, examined Plaintiff. (Tr. 211-12.) After the examination, Dr. Seo concluded that Plaintiff's "[f]unctionality, due to aching back and neck pain, presently, sitting, standing, bending, lifting and carrying heavy objects is slightly limited." (Tr. 212.)

An August 12, 2002 MRI of Plaintiff's cervical spine, indicated a moderate-sized disc/ridge complex and flattening of the anterior aspect of the cervical cord with right foraminal narrowing at C3-4. (Tr. 293.) At C4-5, there was a mild diffuse disc/ridge complex effacing the anterior subarachnoid space without cord compression. (*Id.*) At C5-6, there was a mild disc/ridge complex with left foraminal narrowing and no cord compression. At C6-7, there was a left paracentral disc herniation effacing the anterior subarachnoid space without cord compression. (*Id.*)

On February 28, 2004, an MRI of Plaintiff's cervical spine showed disc-osteophyte complex at C3-4 "with contact and deformity of the cord." (Tr. 416.) At C6-7 there was a left paramedian disc bulge without exiting nerve root involvement and the MRI showed straightening of the normal lordosis. (*Id.*) About four months later, Dr. Snow, a neurosurgeon, concluded that Plaintiff had "multi-level cervical degenerative disc disease with cervical spinal cord compression and spondylosis." (Tr. 413.)

On behalf of the Commissioner, Dr. Louis Lombardi testified at the hearing on March 10, 2008. (Tr. 601-618.) Dr. Lombardi summarized the medical findings and noted "I'm not

doubting that she has pathology based on the MRI and neurologic examination, but it's not borne out...on clinical findings." (Tr. 613-614.) The doctor also concluded that Dr. Songhorian's treatment notes did not support her findings. (Tr. 612.) Specifically, Dr. Lombardi argued that there was no indication that Plaintiff was "100% disabled" as Dr. Songhorian concluded because, to Dr. Lombardi, "a hundred percent...means that the patient is so infirm that they have to be admitted to a hospital and maintain bed rest...." (Tr. 613.)

## II.   DISCUSSION

### A.   Scope of Review

Judicial review of disability insurance benefit determinations is governed by 42 U.S.C. § 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, the decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Although factual findings by the Commissioner are binding when supported by substantial evidence, where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ [as]

-6-

[f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-189 (2d Cir. 2004) (internal quotation marks omitted); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law.").

## B.    Disability Determinations

To qualify for disability insurance, a claimant must be deemed "disabled" as the term is defined by 42 U.S.C. § 423(d)(1)(A):

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" consists of "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five, successive steps (the "Analysis").  20 C.F.R. § 404.1520.  The sequential evaluation process requires that: (1) if the claimant is gainfully employed then she will be found "not disabled"; (2) if the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities, then the analysis proceeds to the third step; (3) if the claimant's "severe" impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and has lasted or is expected to last for a continuous period of at least twelve months, then the claimant is disabled, if not, the analysis proceeds to the fourth step; (4) if, after determining the claimant's residual functional capacity, it is determined that the claimant can perform past relevant work, she will not be found disabled; and (5) if the

-7-

claimant cannot perform any work she has done in the past, and the Commissioner determines

that, in conjunction with her residual functional capacity, age, education, and past work

experience, she cannot engage in other substantial gainful work reasonably available in the

national economy, she is disabled. *Id.*

In determining whether or not a particular claimant is "disabled," the combined effect of

multiple impairments must be taken into consideration by the Commissioner:

> [i]n determining whether an individual's physical or mental impairment or
> impairments are of a sufficient medical severity that such impairment or
> impairments could be the basis of eligibility under this section, the Commissioner
> of Social Security shall consider the combined effect of all of the individual's
> impairments without regard to whether any such impairment, if considered
> separately, would be of such severity. If the Commissioner of Social Security
> does find a medically severe combination of impairments, the combined impact of
> the impairments shall be considered throughout the disability determination
> process.

42 U.S.C. § 1382c(a)(3)(G). The claimant bears the burden of proving disability. *Mimms v.*

*Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). In weighing the medical opinion evidence, the ALJ

is obligated to adhere to the rules set forth in 20 C.F.R. § 404.1527. These rules provide that,

generally, more weight is given to the following: (1) opinions provided by physicians who have

actually examined the claimant; (2) opinions provided by a claimant's treating physicians;

(3) opinions supported by objective relevant evidence; (4) opinions that are more consistent with

the record evidence as a whole; (5) opinions of specialists about medical impairments related to

their area of expertise; (6) opinions that may be supported by any other factors the claimant

brings to the Commissioner's attention. 20 C.F.R. § 404.1527(d)(1)-(6). However, the

Commissioner must give a treating physician's opinion on the nature and severity of an

impairment "controlling weight" if his or her opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). This is the so-called "treating physician rule." "While the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Id.*

### C.    The ALJ's Decision

On May 20, 2008, ALJ Confresi issued a written decision denying benefits. (Tr. 545-66.) In performing the analysis, the ALJ concluded that Plaintiff met the requirements for disability insured status through December 31, 2004.[3] (Tr. 551.) The ALJ also found that Azeez "did not engage in substantial gainful activity during the period from her alleged onset date of April 20, 1999 through her date last insured of December 31, 2004." (*Id.*) Further, although the ALJ found that Plaintiff suffered a severe impairment under the Social Security regulations, he concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments...." (Tr. 559.) This determination required the ALJ to continue to the fourth step of evaluating Plaintiff's residual functional capacity.

### 1.  *Residual Functional Capacity*

Residual functional capacity is what a claimant remains capable of doing despite any impairments, severe or otherwise. 20 C.F.R. § 404.1545(a). The residual functional capacity is determined by considering all relevant evidence, consisting of physical abilities, symptoms

---

[3] To qualify for SSD benefits, one must be both disabled and insured for disability benefits. 42 U.S.C. § 423(a)(1)(A) and (C); 20 C.F.R. §§ 404.101, 404.120, and 404.315(a). The last date that a person meets these requirements is commonly referred to as the date last insured, or the "DLI." Plaintiff's DLI is December 31, 2004 and for her to qualify for SSD benefits, the onset of her disability must have occurred on or before December 31, 2004.

including pain, and descriptions, including those provided by the claimant, of limitations which result from the symptoms. 20 C.F.R. § 404.1545. Physical capabilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. 20 C.F.R. § 404.1567; 20 C.F.R. § 404.1569a. To determine whether a claimant can do a certain category of work, the ALJ must determine the claimant's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a(a). Nonexertional limitations include "difficulty functioning because [claimant] is nervous, anxious, or depressed" as well as "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(i); 20 C.F.R. § 404.1569a(c)(vi).

A claimant's residual functional capacity can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990). The ALJ's finding must specify the functions the claimant is capable of performing; and conclusory statements regarding the claimant's capacities are insufficient. *Id.*; *Kendall v. Apfel*, 15 F. Supp. 2d 262, 268 (E.D.N.Y. 1998). The residual functional capacity is then used to determine particular types of work a claimant could perform. 20 C.F.R. § 404.1545(a)(5).

As defined in 20 C.F.R. § 404.1567(a), "[s]edentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." Sedentary work is the

-10-

least rigorous of the five categories of work which include very heavy, heavy, medium, light, and

sedentary. 20 C.F.R. § 404.1567. Generally, sedentary work involves "up to two hours of

standing or walking and six hours of sitting in an eight-hour work day." *Curry v. Apfel*, 209 F.3d

117, 123 (2d Cir. 2000) *superseded by statute on other grounds*, 20 C.F.R. § 404.1560 (citing

*Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). 20 C.F.R. § 404.1567(b) defines light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities. If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

At the fourth step of the analysis, ALJ Confresi determined that Plaintiff retained the

residual functional capacity for the full range of light work (Tr. 565) or, at least, slightly less than

the full range of light work (Tr. 560). The ALJ concluded that Plaintiff "retained the ability to

sit, stand and/or walk for up to 6 hours in an 8 hour day, as well as to lift or carry as many as 20

pounds occasionally." (Tr. 561.) Plaintiff's past work was exertionally light, therefore the ALJ

concluded that she could return to it. ALJ Confresi added that if she could not return to her past

work, there were several other jobs Plaintiff could perform that are "present in significant

numbers in the national and local economies," such as accounting or general office clerk, or

receptionist. (Tr. 565-66.)

-11-

2. *The Treating Physician Rule*

"The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir.1999); 20 C.F.R. § 404.1527(d)(2). An ALJ is required to provide "good reasons" to accord the opinion other than controlling weight. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "We do not hesitate to remand when the Commissioner ... do[es] not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 326 F.3d at 33.

Plaintiff argues that ALJ Confresi failed to give controlling weight to Dr. Songhorian's medical opinion. (Pl. Mem. of L. at 8.) The ALJ disregarded Dr. Songhorian's opinion that Plaintiff is disabled and unable to perform even sedentary work. (Tr. 565.) The ALJ began by evaluating Dr. Songhorian's assessment of Plaintiff's residual functional capacity. "First off, Dr. Songhorian states that the claimant can sit, stand and/or walk for no more than 1 hour in an 8 hour day. If this were true the claimant would not be disabled for purposes of the Social Security program. Instead, she would be completely incapacitated." (Tr. 563.) The ALJ also found that Dr. Songhorian's treatment records did not support her assessment. On this point, the ALJ wrote that Dr. Songhorian's "findings consistently included intact cranial nerves, full motor power in the extremities, a normal gait, no loss of motor power of sensation, and only 'occasional' complaints of numbness" and that the "records also contain[ed] assertions that are not found in the treatment notes" such as the doctor "stat[ing] that the claimant suffers from 'auras,' malaise, loss of appetite and photosensitivity." (Tr. 563-64.) The ALJ writes that Dr. Steven Futrell, the state agency psychologist who provided a one-time consultative psychiatric evaluation, noted

-12-

Plaintiff had a normal appetite. (Tr. 564.) "Dr. Songhorian also stated that the claimant cannot tolerate stress, even though [s]he is not a psychiatrist, has not performed a mental status evaluation, and has not diagnosed the claimant with any mental impairment or treated her for one." (*Id.*) The ALJ writes that many doctors who saw Plaintiff contradict the assertion of disability. (*Id.*) He expressed, *inter alia*, that Dr. Snow said Plaintiff's neck pains were getting "better," Dr. Decker reported "essentially negative" results in June 1999, along with excellent motor strength, and Dr. Seo found normal cervical lordosis with "only slight functional restrictions." (*Id.*)

The ALJ articulated the above as support for his dismissal of Dr. Songhorian's opinion. However, while evaluating the doctor's opinion for purposes of complying with the treating physicians rule, he failed to acknowledge the material in the record that supported Dr. Songhorian's diagnosis. The various MRIs in the record each showed damage to Plaintiff's spinal column and earlier MRIs found cord compression. (Tr. 192, 194, 293, 416; *see supra* 4-5.) In fact, the ALJ acknowledged that, while he did not find the Plaintiff to be disabled, Plaintiff's objective impairments *could* significantly hinder someone in the way Plaintiff claimed: "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms...." (Tr. 562.) In other words, the symptoms of which Plaintiff complained could logically have followed from her medical impairment. Further, although the ALJ noted that Dr. Futrell mentioned Plaintiff had a normal appetite, it is clear from the record that Dr. Futrell was repeating what Plaintiff had stated that day: "Claimant stated...that her appetite is normal." (Tr. 382.) However, Dr. Songhorian saw Plaintiff over a longer period of time, and therefore, had a stronger basis for evaluating Plaintiff's appetite. The ALJ dismissed

-13-

Dr. Songhorian's notes on Plaintiff's ability to handle stress on the grounds that Dr. Songhorian is "not a psychiatrist" and "has not performed a mental status evaluation" or "diagnosed the claimant for any mental impairment." (Tr. 564.) However, Dr. Futrell did perform a mental status evaluation and diagnosed Plaintiff with major depressive disorder. (Tr. 385.)

Also, the ALJ noted the findings from Drs. Snow, Decker and Seo that supported his arguments. However, in a June 24, 2004 letter, Dr. Snow wrote that Plaintiff "has multi-level cervical degenerative disc disease with cervical spinal cord compression and spondylosis" that will, "in all likelihood[,] not get better." (Tr. 413.) Dr. Decker specifically referred to Plaintiff's neurological examination as "essentially negative" but also noted the spinal cord compression indicated by Plaintiff's CT scan and MRI and recommended an eventual surgery when he saw Plaintiff in June 1999. (Tr. 121-22.) Dr. Seo found that Plaintiff was "slightly limited" and noted normal cervical lordosis on July 28, 2000 (Tr. 211-12), but the February 2004 MRI found straightening of the normal lordosis (Tr. 416). Furthermore, another of Plaintiff's treating physicians, Dr. Harold Weissman, Plaintiff's general internist, also opined that Plaintiff was disabled, noting that the Plaintiff could not lift or carry more than 2 pounds, nor sit for more than 15 minutes. (Tr. 243A.)

An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give the opinion. 20 C.F.R. § 404.1527(d)(2). These factors include: (i) the frequency of examination and the length, nature and extent of treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's

-14-

attention that support or contradict the opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(6). The regulations also require the ALJ to set forth his reasons for the weight he assigns to the treating physician's opinion. *Shaw*, 221 F.3d at 134. Failure to follow this standard constitutes a failure to apply the proper legal standard and is grounds for reversal. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

There is no evidence that the ALJ evaluated each of the required factors to give Dr. Songhorian's opinion its due weight. Even if an opinion is not given controlling weight due to conflicts in the record, it does not automatically indicate the physician's opinion is given no weight at all. "When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d. Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). The Court in *Schaal* determined that the ALJ's decision in that case was "flawed" and "tainted by legal error" because "the ALJ failed to consider all of the factors cited in the regulations." *Id.* at 504. In evaluating Dr. Songhorian's opinion for purposes of the treating physician rule, the record gives no indication that the ALJ considered the long relationship between Dr. Songhorian and Plaintiff, nor the evidence in support of Dr. Songhorian's opinion as discussed above. Nor is there evidence that the ALJ duly considered that, as a neurologist, Dr. Songhorian is a specialist in the area of Plaintiff's injuries.

**D.    Remand**

Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by

considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). However, the ALJ has misapplied the relevant legal standards, and a remand to the Commissioner is necessary. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)); *see also Rosa*, 168 F.3d at 82-3. "Where application of the correct legal standard could lead to only one conclusion, we need not remand." *Schaal*, 134 F.3d at 504 (citing *Johnson*, 817 F.2d at 986). In this case, however, the ALJ must properly weigh the treating physicians' opinions before a clear conclusion can emerge. In light of the above, the Court cannot, as Plaintiff requests, remand the case only for determination of benefits.

Since the Court remands this case based on the ALJ's failure to apply the correct legal standard, it does not consider the Commissioner's arguments that the final decision was supported by substantial evidence.

## III.   CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff's and Defendant's motions for judgment on the pleadings are denied and the matter is reversed and remanded to the Commissioner for further proceedings consistent with this opinion. The Commissioner is directed to commence proceedings within sixty days of this Memorandum and Order.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated: March 20, 2012
       Brooklyn, New York

-16-